# United States Court of Appeals
## For the First Circuit

---

No. 22-1875

UNITED STATES OF AMERICA,

Appellee,

v.

MICHEL D'ANGELO, a/k/a Karma,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

---

Before

Kayatta, Thompson, and Gelpí,
Circuit Judges.

---

Kevin E. Lerman, Assistant Federal Public Defender, with whom
Rachel Brill, Federal Public Defender, and Franco L.
Pérez-Redondo, Assistant Federal Public Defender, were on brief,
for appellant.

Jeanne D. Semivan, Assistant United States Attorney, with
whom Darcie N. McElwee, United States Attorney, was on brief, for
appellee.

---

July 30, 2024

---

GELPÍ, __Circuit Judge__.     Michel D'Angelo ("D'Angelo")
appeals the district court's denial of his motion for compassionate
release.  He argues that the district court erred in evaluating
whether extraordinary and compelling reasons and the factors in 18
U.S.C. § 3553(a) favored reducing his sentence.  At bottom, he
contends that the district court overprioritized his potential for
dangerousness when it denied his motion under § 3553(a).  We
affirm.

## I.  BACKGROUND

### A. Original Offense Conduct and Proceedings

D'Angelo robbed Kennebunk Savings Bank in Berwick, Maine
on September 21, 2012.  His girlfriend, Jennica, had dropped him
off at the bank that morning.  Disguised in a long brown wig,
sunglasses, a purse, red sweatshirt, pink sweatpants, and with a
screwdriver in his pocket, D'Angelo approached the counter.  He
told the bank teller that he had a bomb in his purse, warned that
he would detonate it if the teller set off the alarm, and demanded
money.  Terrified, the teller complied.  D'Angelo stole $1,298 and
fled.  To divert law enforcement, Jennica twice called 911 during
the robbery and lied about being stabbed across town.

D'Angelo and Jennica were arrested and then indicted in
the District of Maine.  On February 13, 2014, D'Angelo pleaded
guilty to one count of bank robbery, 18 U.S.C. § 2113(a).

Before D'Angelo's sentencing, the U.S. Probation Office prepared a presentence investigation report ("PSR"). The PSR listed his criminal history, beginning at age seventeen. He committed burglary, theft, disorderly conduct, criminal threatening, multiple assaults, and trafficking in prison contraband, among other crimes. The PSR assigned him criminal history points for two particular offenses: assaulting a police officer and criminal threatening with a dangerous weapon. Because the PSR treated these offenses as "crimes of violence," it designated D'Angelo a "career offender" under U.S.S.G. § 4B1.1. This designation raised his offense level from twenty-nine to thirty-two, his criminal history category from V to VI, and his suggested imprisonment range to 210 to 240 months.[1]

The PSR described D'Angelo's medical and mental health history in detail. When D'Angelo was four years old, he fell from a second-level porch and fractured his skull. This "annihilated" his brain's impulse control center. D'Angelo's injury caused seizures, and he suffered more head injuries throughout his life -- including being hit in the head with a pipe and colliding with a tree in a car traveling over eighty miles per hour -- which aggravated his seizures. D'Angelo also struggled with significant

---

[1] Although the high end of D'Angelo's advisory Guidelines range was 262 months, bank robbery carries a 240-month maximum term of imprisonment. 18 U.S.C. § 2113(a).

mental health disorders and substance abuse.  Throughout his life, D'Angelo often attempted suicide, was admitted to psychiatric hospitals, and engaged in severe self-harm.

The district court sentenced D'Angelo on June 20, 2014. The bank tellers testified, describing how D'Angelo shattered their sense of security.  Afterwards, the district court calculated D'Angelo's advisory Guidelines range as we described above and noted that he "qualified as a career offender."  The government pushed for a 240-month sentence, predicated mostly on "the need to protect the public from [D'Angelo's] further crimes" due to his offense conduct, lengthy criminal history, and alcohol and drug abuse, which the government argued made him unpredictable. D'Angelo's counsel sought a downward variance to 144 months' imprisonment, citing D'Angelo's brain injury.

The district court varied downward to 180 months' imprisonment.  To reach this figure, the district court first accounted for, among D'Angelo's life's many difficulties, his brain injury and mental health.  But the district court also described the "absolute terror" that his "serious offense" caused the victims and how his "criminal history [was] really longer than [the judge's] arm."  The district court again described D'Angelo as a "career offender" under the Guidelines and mentioned that his "life from age [sixteen] to today has just been one scrape with the law after another."  It also factored in his drug abuse with

his medical and mental health history, describing this combination as a "perfect storm."  To achieve "balance" between D'Angelo's "struggles" and the need "to protect the public," the district court varied downward by two points to account for, among other things, D'Angelo's guilty plea and "serious psychological . . . problems." It thus arrived at an imprisonment range between 168 to 210 months and imposed 180 months' imprisonment followed by five years' supervised release.

### B. Post-Sentencing Proceedings

D'Angelo appealed his sentence unsuccessfully.  United States v. D'Angelo, 802 F.3d 205, 206 (1st Cir. 2015).  He filed equally unsuccessful post-conviction motions, including a motion to vacate his sentence under 28 U.S.C. § 2255.  D'Angelo v. United States, No. 19-2091, 2021 WL 4955612, at *1 (1st Cir. May 10, 2021); D'Angelo v. United States, No. 2:13-cr-00114, 2021 WL 5371552, at *1 (D. Me. Nov. 16, 2021).

D'Angelo applied for a second or successive § 2255 motion on October 25, 2021, based on the Supreme Court's decision in Borden v. United States, 593 U.S. 420 (2021).  See Motion for Second or Successive 2255, D'Angelo v. United States, No. 21-1870, at *1 (1st Cir. Oct. 25, 2021).  In Borden, the Supreme Court held that "violent felon[ies]" under the "elements" clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i), do not include offenses criminalizing reckless conduct.  593 U.S. at 429.

Because decisions interpreting "violent felonies" under the ACCA inform how we construe "crimes of violence" under the Guidelines and vice versa, see United States v. Faust, 853 F.3d 39, 57 (1st Cir. 2017), D'Angelo argued that Borden, if it applied retroactively, affected his career offender-predicate convictions. Motion, D'Angelo, at *1. We denied his application because D'Angelo did not show that the Supreme Court in Borden declared a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." D'Angelo v. United States, No. 21-1870, at *1 (1st Cir. Dec. 23, 2021) (emphases added) (quoting 28 U.S.C. § 2255(h)(2)).

       D'Angelo then moved for compassionate release in the district court on February 28, 2022, amending that motion on April 27, 2022. He argued again that, if he were sentenced after Borden, then one of his predicate offenses would not have been a "crime of violence" and he would have faced a different advisory Guidelines calculation. He contended that "[h]is offense level would have been [twenty-nine]," "his criminal history level would have been V," and, in 2013, his range of imprisonment would have been "140-174 months" before the district court's two-point downward variance. With that variance, his range would have been 120-150 months.

       D'Angelo also claimed that his mental health, brain injuries, history of seizures, and poor medical treatment in the

- 7 -

Bureau of Prisons ("BOP") were extraordinary and compelling reasons for release. He contended that the BOP ignored his mental health issues and failed to prevent him from harming himself or attempting suicide several times. Further, he argued that he would not pose a danger to the community if released, pointed to his lack of recent disciplinary history and taking classes in BOP custody, and stressed that his reduced remaining term of imprisonment -- only 30% of 180 months -- favored a sentence reduction.

The government opposed. Besides disputing D'Angelo's proposed extraordinary and compelling reasons, the government advanced D'Angelo's risk of dangerousness to the community and the § 3553(a) factors as reasons to deny his motion. Pointing to D'Angelo's violent criminal conduct and lengthy criminal history, the government urged the district court to deny a sentence reduction based on his potential dangerousness. And, under § 3553(a), the government noted D'Angelo's serious offense, high risk of recidivism, and lengthy disciplinary history from 2014 to 2020 while incarcerated. The government claimed that several § 3553(a) factors -- the seriousness of the offense, promoting respect for the law, providing just punishment, and affording adequate deterrence -- weighed against granting the motion.

The district court denied the motion. It first analyzed D'Angelo's proposed extraordinary and compelling reasons in

isolation.  As relevant to our analysis, the district court acknowledged that D'Angelo would not be a career offender post-Borden and agreed with his proposed lower Guidelines calculation.  Yet it concluded that this "classic post-conviction argument[], without more," was neither extraordinary nor compelling.  That said, weighing his reasons holistically, the district court found that D'Angelo came much "closer to presenting extraordinary and compelling circumstances."

But, without deciding whether he met this threshold, the district court concluded that D'Angelo "stumble[d] at the [§] 3553(a) factors."  It then listed these factors before signaling that it was most concerned with § 3553(a)(2)(C), "the need 'to protect the public from further crimes of the defendant.'"  To assuage this concern, the district court sought "reasonable assurance that . . . D'Angelo would not pose a danger to the community if released."  To that end, D'Angelo's "violent" offense conduct -- robbing a bank while carrying a screwdriver, threatening to set off a bomb, and relying on his girlfriend to divert law enforcement -- and significant criminal history did not favor a sentence reduction.  And the district court further noted D'Angelo had "been punished for at least eighteen infractions" while incarcerated, some of which were seriously violent.  Although it recognized that D'Angelo improved his behavior over the past two years, the district court remained concerned because the BOP

sanctioned him for possessing an unauthorized item a few months before his motion.  Lastly, the district court empathized with D'Angelo's mental health struggles and brain injuries, reasoning that these likely spurred his "crimes and prison infractions."  Yet "those very conditions impact[ed] [D'Angelo's] dangerousness," so the district court "simply [could not] conclude that, if released, . . . D'Angelo would no longer pose a danger to the community."

This timely appeal followed.

## II. DISCUSSION

"We review a district court's denial or grant of a compassionate release motion for abuse of discretion.  Questions of law are reviewed de novo and findings of fact are reviewed for clear error."  United States v. Gonzalez, 68 F.4th 699, 702 (1st Cir. 2023) (quoting United States v. Trenkler, 47 F.4th 42, 46 (1st Cir. 2022)).

### A. Legal Framework

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, modified 18 U.S.C. § 3582, the compassionate release statute.  Now, district courts may grant prisoner-initiated compassionate release motions once movants "fully exhaust[]" their administrative remedies with the BOP.  18 U.S.C. § 3582(c)(1)(A).

The compassionate release statute outlines three steps: (1) there are "extraordinary and compelling reasons" that warrant

a sentence reduction; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "after considering the factors set forth in [§] 3553(a) to the extent that they are applicable," the court finds, in its discretion, that the particular circumstances of the case justify reducing the defendant's sentence.  Id.  A district court may grant a compassionate release motion only if it finds that the movant satisfies each step.  See United States v. Ruvalcaba, 26 F.4th 14, 18-19 (1st Cir. 2022); United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021).  And it must deny the motion if that movant fails at any step.  See United States v. Texeira-Nieves, 23 F.4th 48, 52 (1st Cir. 2022); United States v. Wright, 46 F.4th 938, 945 (9th Cir. 2022).  It need not address the other steps if one is not met, but we encourage district courts to go the extra mile.  See Texeira-Nieves, 23 F.4th at 52.

One wrinkle is worth explaining.  Step two requires that a sentence reduction be consistent with "applicable policy statements" from the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A).  We held in Ruvalcaba, 26 F.4th at 19-24, that the relevant policy statement, U.S.S.G. § 1B1.13 -- as it existed at the time of D'Angelo's motion -- is not "applicable" and thus does not constrain a district court when it rules on prisoner-initiated motions.  For this appeal, that holding means that the three-step test stated above is really two steps: A

district court must find that (1) extraordinary and compelling reasons and (2) the applicable factors under § 3553(a), on balance and applied to the defendant, warrant a sentence reduction.

Even so, this "policy statement -- though not 'applicable' -- nonetheless may serve as a non-binding reference." Ruvalcaba, 26 F.4th at 23 (collecting cases). This non-binding policy statement required the district court here to determine, among other things, that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[2] U.S.S.G. § 1B1.13(a)(2) (2018).

A district court faced with a compassionate release motion has ample, yet not boundless, discretion at both steps. District courts "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." Ruvalcaba, 26 F.4th at 28. Because "the whole may be greater than the sum of its parts," district courts must "be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the 'extraordinary and compelling' standard." Trenkler, 47 F.4th at 49-50. Yet this standard is "narrow" and "stringent," id. at

_____

[2] The 2023 Guidelines, effective November 1, 2023, amended § 1B1.13. See U.S.S.G. § 1B1.13 (2023). Now, § 1B1.13 applies to prisoner-initiated compassionate release motions and expands what can qualify as an extraordinary and compelling circumstance for release. See id. D'Angelo moved for compassionate release before this amendment, so it did not apply below.

48 n.14, because whether a reason is "extraordinary and compelling" "is logically guided by the plain meaning of those terms," Ruvalcaba, 26 F.4th at 23 (quoting United States v. Canales Ramos, 19 F.4th 561, 566 (1st Cir. 2021)).

As we previewed, even if a defendant shows "that there are extraordinary and compelling circumstances warranting a reduced sentence," that motion "may still be denied . . . 'solely on the basis of [the district court's] supportable determination that the [§] 3553(a) factors weigh against the granting of such relief.'"  United States v. Ayala-Vázquez, 96 F.4th 1, 13 (1st Cir. 2024) (quoting Texeira-Nieves, 23 F.4th at 55).  Generally, the same ground rules we apply for a sentencing appeal premised on § 3553(a) apply when we review a compassionate release appeal under § 3553(a).  See Saccoccia, 10 F.4th at 10; Texeira-Nieves, 23 F.4th at 55-56.  How a district court weighs the § 3553(a) factors is a "traditional exercise of [its] discretion" -- discretion that springs from its "vantage point and day-to-day experience in criminal sentencing."  United States v. De La Cruz, 91 F.4th 550, 554 (1st Cir. 2024) (quoting Koon v. United States, 518 U.S. 81, 98 (1996)).  The district court "has access to, and greater familiarity with, the individual case and the individual defendant" than we do, so it possesses "an institutional advantage over appellate courts in making these sorts of determinations"

- 13 -

that deserves some deference. <u>Gall</u> v. <u>United States</u>, 552 U.S. 38, 51-52 (2007) (internal quotations omitted).

Our review is not "overly searching." <u>Concepcion</u> v. <u>United States</u>, 597 U.S. 481, 501 (2022). We ask whether we can "discern to some extent a district court's reasoning" for why it ruled as it did under § 3553(a), <u>Texeira-Nieves</u>, 23 F.4th at 55-56, and if that ruling had "a reasoned basis," <u>Chavez-Meza</u> v. <u>United States</u>, 585 U.S. 109, 117 (2018) (quoting <u>Rita</u> v. <u>United States</u>, 551 U.S. 338, 359 (2007)). We are mindful in this review that "the 'law leaves much' to 'the [district court's] own professional judgment'" on how much to say. <u>Chavez-Meza</u>, 585 U.S. at 117 (quoting <u>Rita</u>, 551 U.S. at 356). "[A] district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation. Nor is a district court required to articulate anything more than a brief statement of reasons." <u>Concepcion</u>, 597 U.S. at 501. Even where the district court's explanation leaves much to the imagination, "we consider the entire context and record," and can often infer the district court's reasoning "by comparing what was argued by the parties . . . with what" the district court decided. <u>Texeira-Nieves</u>, 23 F.4th at 56.

Section 3553(a) commands broadly that a district court's ruling on a compassionate release motion should reflect that the

sentence remains "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a).  Following that principle requires the district court to weigh several enumerated factors, not all of which carry weight in every case.  See id. § 3582(c)(1)(A); United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013).  Accordingly, "'[m]erely raising potentially mitigating factors does not guarantee' a favorable decision."  Saccoccia, 10 F.4th at 10 (alteration in original) (quoting United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010)).  A district court does not have to "tick off each and every factor in a mechanical sequence," Saccoccia, 10 F.4th at 10, nor must it craft an explanation that is "precise to the point of pedantry," United States v. Merced-García, 24 F.4th 76, 80 (1st Cir. 2022) (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014)).  Rather, "the sentencing court need only identify the main factors behind its decision," Merced-García, 24 F.4th at 81, and "we presume -- absent some contrary indication -- that a sentencing court considered all the mitigating factors and that those not specifically mentioned were simply unpersuasive," Saccoccia, 10 F.4th at 10.

## B. D'Angelo's Arguments

The district court denied D'Angelo's motion under § 3553(a). We thus focus on D'Angelo's arguments related to the district court's § 3553(a)-based ruling.

### 1. Dangerousness

D'Angelo centers his argument on the district court's discussion of his potential dangerousness. He seizes on its statement that it needed "reasonable assurance" that he "would not pose a danger to the community if released." D'Angelo argues that this statement shows that the district court believed that he carried the burden "to [prove] that he [was] no longer a danger to the community" before proving why he was entitled to a sentence reduction under § 3553(a). He thus contends that the district court erred because it "conduct[ed] a single-factor analysis . . . far stricter" than § 3553(a), and that "focused exclusively on danger."

We rejected a similar argument in United States v. Ayala-Vázquez. 96 F.4th at 13. There, the defendant argued that the district court erred because he contended that it denied his motion "solely on the requirement in U.S.S.G. § 1B1.13(a)(2) that a defendant not be a 'danger to the safety of any other person or the community'" rather than § 3553(a). Id. We disagreed. Id. "While the District Court did refer to § 1B1.13 in its discussion of Ayala's medical conditions," it "cited to § 3553(a) in its

- 16 -

subsequent conclusion as to Ayala's dangerousness." Id. Its "express[] cit[ation] to § 3553(a)" permitted us to conclude that, absent some contrary indication, it independently relied on § 3553(a) to conclude that Ayala posed a danger to the community. Id.

So too here. In reaching its conclusion, the district court noted that D'Angelo faltered at the § 3553(a) factors and singled out § 3553(a)(2)(C) before denying the motion. Its statements invoking § 3553(a) are "entitled to some weight." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting Dávila-González, 595 F.3d at 49). And while D'Angelo makes much of the district court's "reasonable assurance" language, the district court "expressly cited to § 3553(a)" in the same passage before discussing D'Angelo's violent offense conduct, criminal history, and personal circumstances. Ayala-Vázquez, 96 F.4th at 13. We gather that it meant what it said: It denied the motion under § 3553(a) because D'Angelo posed a danger to the community if released. See, e.g., Saccoccia, 10 F.4th at 9-10 (rejecting the defendant's argument that the district court ignored many § 3553(a) factors when it stated that compassionate release "would send the wrong message both to [Saccoccia] and to society" because it stated that it denied the motion on "the 'balance' of the factors").

Tying D'Angelo's potential dangerousness to § 3553(a)(2)(C) was reasonable. That factor concerns public protection, a concept that necessarily entails the danger that a defendant poses to the community. Cf. United States v. Avalos Banderas, 39 F.4th 1059, 1061 (8th Cir. 2022) ("That the inmate presented a potential danger to the public if released is also a permissible consideration." (citing 18 U.S.C. § 3553(a)(2)(C))); United States v. Sherwood, 986 F.3d 951, 954 (6th Cir. 2021) (recognizing that a district court may consider a defendant's "propensity to be a danger to the community upon release" under § 3553(a)(2)); United States v. Townsend, 106 F.4th 658, 659 (7th Cir. 2024) (describing § 3553(a)(2)(C) as concerning "public protection" or "[d]anger to the public"). A district court therefore does not err when it considers a compassionate release movant's potential dangerousness under § 3553(a).

Accordingly, the district court did not err here. D'Angelo committed a frightening and life-endangering offense, had a significant criminal history, and accumulated a tumultuous disciplinary record while incarcerated. So, the district court could reasonably conclude that, if released, he posed a danger to the community per § 3553(a)(2)(C). Its denial premised on this point fell within its discretion. See Ayala-Vázquez, 96 F.4th at 13-14 (affirming where the district court concluded that, based on the defendant's criminal record, he remained a danger to the

community and thus denied his compassionate release motion); Texeira-Nieves, 23 F.4th at 56-57.

To the extent D'Angelo believes that the district court's focus on dangerousness suggests that it overlooked the remaining § 3553(a) factors and his arguments for release (such as his mental health and BOP treatment), we disagree. "Merely raising potentially mitigating factors" will not guarantee a sentence reduction, and D'Angelo cannot assume that his "failure to persuade the court . . . implies that the mitigating factors he cites were overlooked." United States v. Santa-Soler, 985 F.3d 93, 99 (1st Cir. 2021). Rather, the record shows us that the district court considered his arguments and § 3553(a) as a whole yet identified public protection as the "main factor[] behind its decision." Merced-García, 24 F.4th at 81 (quoting United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015)).

The district court discussed, in thorough detail, the factors that D'Angelo raised for release throughout its order. In doing so, it also acknowledged that D'Angelo's mental health struggles and brain injury likely led him to commit crime because they affected his impulse control. Still, "those very conditions impact[ed] his dangerousness," so the district court was unconvinced that reducing D'Angelo's sentence was appropriate under § 3553(a). Even if the district court did not reiterate which factors and evidence favored D'Angelo precisely before its

conclusion under § 3553(a), the compassionate release statute does not require district courts to be "precise to the point of pedantry." Merced-García, 24 F.4th at 80; see Concepcion, 597 U.S. at 501. We discern from its order that the district court implicitly weighed all the relevant factors and evidence, yet reasonably concluded that D'Angelo's potential dangerousness under § 3553(a) outweighed all else.[3]

Were we to need more (we do not), we could consider that the district judge who presided below originally sentenced D'Angelo. Her "intimate knowledge of the offense of conviction and [D'Angelo's] history and characteristics" informed how she carefully balanced his offense conduct, lengthy criminal history, record while incarcerated, and tragic mental health and medical history. Texeira-Nieves, 23 F.4th at 57. We afford a "considerable measure of respect" to her decision to conclude that the same balance at sentencing -- between D'Angelo's life's "struggles" and the need "to protect the public" -- favored

---

[3] D'Angelo contends that because the government "argued for a binary dangerousness test aside from [the] § 3553(a) factors," we should intuit its reasoning into the district court's order. But the government also argued that a sentence reduction would undermine the seriousness of the offense and not promote respect for the law, provide just punishment, or afford adequate deterrence. See 18 U.S.C. §§ 3553(a)(2)(A)-(B). Comparing this § 3553(a)-based argument with the district court's § 3553(a)-based conclusion further proves that the district court based its denial on § 3553(a). See, e.g., Texeira-Nieves, 23 F.4th at 56.

denying D'Angelo's motion. <u>Id.</u> (quoting <u>United States</u> v. <u>Aponte-Guzmán</u>, 696 F.3d 157, 161 (1st Cir. 2012)).

D'Angelo's next argument is equally unpersuasive. He believes that the district court's citation to <u>United States</u> v. <u>West</u>, No. 2:15-cr-00168, 2022 WL 911256, at *1 (D. Me. Mar. 29, 2022), proves reversible error. He contends that <u>West</u> is one of many orders from the district court "adopting a heightened dangerousness test" rooted in § 1B1.13 that made potential dangerousness its own threshold. His argument misapprehends how we review compassionate release appeals.

Like a sentencing appeal, we look at the context and the record to determine whether the district court "adequately explain[ed]" its decision "to allow for meaningful appellate review." <u>Chavez-Meza</u>, 585 U.S. at 115 (quoting <u>Gall</u>, 552 U.S. at 50). The district court made clear that it was concerned with D'Angelo's risk of danger to the community as it pertained to § 3553(a)(2)(C) -- the factor it cited. Indeed, it referenced D'Angelo's violent offense conduct, lengthy criminal history, disciplinary record in prison, and mental health issues after citing § 3553(a)(2)(C). We discern that it grounded its ruling in § 3553(a) notwithstanding its citation to <u>West</u>.

But if we dig as deep as D'Angelo demands, the district court's order survives scrutiny. <u>West</u> (written by the same district judge) also relied on §§ 3553(a) and 3553(a)(2)(C) to

deny a motion for a sentence reduction.  See West, 2022 WL 911256, at *1 ("I must also consider whether a sentencing modification accords with the § 3553(a) factors, and as a part of that analysis, I must evaluate whether Mr. West would pose a danger to the community were he released.").  By drawing attention to West, D'Angelo only highlights that the district court here denied his motion under § 3553(a) based on his potential dangerousness if released (as it said).

Resisting this conclusion, D'Angelo urges us to recognize that West also quoted United States v. Whindleton, No. 2:13-cr-00064, 2020 WL 7265844, at *3 (D. Me. Dec. 10, 2020). West's quotation from Whindleton stated that "because [the district court found] that Mr. West does 'remain[] a danger to the community, and thus that compassionate release is not warranted,'" then it did not need to "conduct the remainder of the analysis." West, 2022 WL 911256, at *1 (quoting Whindleton, 2020 WL 7265844, at *3).  D'Angelo cites this as proof that the district court analyzed "dangerousness" separate from § 3553(a).

But this argument places more weight on the district court's citation to West than it can bear.  D'Angelo does not meaningfully address how the district court's order undermines his reading: citing to § 3553(a)(2)(C), stating that it denied his motion under § 3553(a), and considering his mental health history, criminal record, and offense conduct specifically under § 3553(a).

Nor does he address West's reliance on § 3553(a)(2)(C). We refuse to ignore this context and place the emphasis on West's stray quotation as D'Angelo demands.

Relatedly, we reject as significant D'Angelo's assumption that the district court viewed itself as "constrain[ed]" by § 1B1.13 because it denied his motion based on his potential dangerousness if released. We explained why, like Ayala-Vázquez, the record contradicts D'Angelo's premise. 96 F.4th at 13. But even accepting his premise for argument's sake, he does not show reversible error. A district court's independent conclusion that the § 3553(a) factors favor denying a compassionate release motion insulates its error in treating the policy statement as binding. See id.; Texeira-Nieves, 23 F.4th at 54-55. That principle follows from the compassionate release statute's conjunctive structure. 18 U.S.C. § 3582(c)(1)(A); see Wright, 46 F.4th at 947; United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021). The record reveals that the district court denied D'Angelo's motion under § 3553(a). Even if the district court believed the applicable policy statement to be binding, its independent, § 3553(a)-based denial made that belief harmless. See, e.g., Texeira-Nieves, 23 F.4th at 55; Wright, 46 F.4th at 948 (finding that the district court's conclusion that § 1B1.13 was binding harmless because it "properly relied" on § 3553(a) "as an alternative basis").

## 2. Extraordinary and Compelling Reasons

Because the district court properly denied D'Angelo's motion under § 3553(a), we ordinarily would not need to discuss its extraordinary-and-compelling analysis. See Texeira-Nieves, 23 F.4th at 54. That said, D'Angelo alleges that the district court's alleged analytical errors at that step tainted its § 3553(a) rationale.[4] He analogizes "an incorrect extraordinary and compelling classification" to "a court's erroneous [G]uideline calculation." An erroneous Guideline calculation is a significant procedural error warranting remand unless the district court or the record make clear that the court found the sentence appropriate despite the Guidelines range. See United States v. Monson, 72 F.4th 1, 14 (1st Cir. 2023). D'Angelo thus argues that we should remand due to the district court's alleged errors at the extraordinary-and-compelling-reasons step.

We are unpersuaded. The compassionate release statute and relevant case law are abundantly clear: A district court may deny a compassionate release motion if a defendant fails at any step, notwithstanding that court's analytical mistake at another step. See 18 U.S.C. § 3582(c)(1)(A); Ayala-Vázquez, 96 F.4th at 13; Texeira-Nieves, 23 F.4th at 55; Wright, 46 F.4th at 947; United

---

[4]    Those alleged errors consisted of assuming that extraordinary and compelling circumstances excluded circumstances known at sentencing, and failing to treat Borden's change of law as such a circumstance.

States v. Tomes, 990 F.3d 500, 503-04 (6th Cir. 2021). The district court denied the motion under § 3553(a) alone -- as its decision and the record reflect. Cf. Monson, 72 F.4th at 14 (affirming where the district court "explicitly stated its intent to uncouple the sentence from the Guidelines"). Because we find no error in its § 3553(a) analysis, then the particular errors D'Angelo alleges in the court's failure to find extraordinary and compelling circumstances are of no moment.

D'Angelo presses a related point worth mentioning. If he were sentenced after Borden, then he would have faced a lower Guidelines range. Thus, he claims that "the district court had no occasion to consider the newly applicable range" when it denied his motion under § 3553(a). And, according to him, this was error because a district court operating under § 3553(a) must first calculate the revised Guidelines range before conducting "an individualized assessment based on the facts presented." Gall, 552 U.S. at 50.

The record belies his argument. The district court recognized that had it sentenced D'Angelo at the time of his motion, "he would not have qualified as a career offender, and he would have been sentenced under a lower [G]uideline range." It then correctly calculated this lower Guidelines range before explaining why § 3553(a) did not favor reducing D'Angelo's sentence. Because the district court performed its § 3553(a)

analysis after assuming that the career-offender enhancement would not apply, we gather from context that it implicitly considered that Guidelines range as part of its analysis. See, e.g., United States v. Warren, 22 F.4th 917, 921, 929-30 (10th Cir. 2022) (affirming denial of the defendant's First Step Act motion where the district court assumed that the career-offender designation would not apply if the defendant were resentenced but found that the § 3553(a) factors did not favor a sentence reduction). It thus did not make the mistake that D'Angelo accuses it of making.[5]

### III. CONCLUSION

For the aforementioned reasons, we **affirm**.

---

[5] D'Angelo implies that the district court needed to restate his Guidelines recalculation in its § 3553(a) analysis to prove that it really considered it under § 3553(a). "Judges are not required to repeat themselves." United States v. Miedzianowski, 60 F.4th 1051, 1056 (7th Cir. 2023). The district court acknowledged D'Angelo's revised Guidelines range before explaining, in adequate detail, why the § 3553(a) factors did not favor reducing his sentence. That was enough here. See, e.g., id. (rejecting a similar argument concerning the defendant's First Step Act motion where "[t]he court's order show[ed] that the judge considered the current statutory ranges" before it denied a sentence reduction under § 3553(a)); cf. United States v. Akridge, 62 F.4th 258, 265-66 (6th Cir. 2023) (district court was not required to expressly consider non-retroactive changes affecting the defendant's career-offender designation under § 3553(a) because it declined to reduce the defendant's sentence based on his criminal history, serious offense conduct, and post-sentencing disciplinary record).